**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT ANSARA, *et al.*,  )
                                              )
　　　　　　　Plaintiffs,      )　　Case No.: 2:19-cv-01394-GMN-VCF
　　vs.                                   )
                                              )　　**ORDER**
GLORIA MALDONADO, *et al.*, )
                                              )
　　　　　　　Defendants.    )
                                              )

　　　Pending before the Court is the Motion to Dismiss, (ECF No. 70), filed by Defendant Tropicana DE, LLC d/b/a Siegel Suites of Tropicana ("Tropicana"). Plaintiffs Robert Ansara, David Banks, and Gabrielle Branon-Chelsey ("Plaintiffs") filed a Response, (ECF No. 90), and Tropicana filed a Reply, (ECF No. 94).

　　　Also pending before the Court is the Motion to Dismiss, (ECF No. 72), filed by Defendants Clark County, Gloria Maldonado ("Maldonado"), and Audra Gutierrez ("Gutierrez") (collectively, "Clark County Defendants"). Plaintiffs filed a Response, (ECF No. 87), and Clark County Defendants filed a Reply, (ECF No. 102).

　　　Also pending before the Court are Clark County Defendants' Motions for Leave to File Exhibits Under Seal, (ECF Nos. 73, 103). Plaintiffs did not file a response.

　　　Also pending before the Court is Plaintiffs' Motion to Amend the Second Amended Complaint, (ECF No. 91). Clark County Defendants filed a Response, (ECF No. 101), and Plaintiffs filed a Reply, (ECF No. 112).

For the reasons discussed below, the Court **DENIES** Tropicana's Motion to Dismiss, **GRANTS in part** and **DENIES in part** Clark County Defendants' Motion to Dismiss, **GRANTS**[1] the Motions for Leave to File Exhibits, and **DENIES** the Motion to Amend.

## I. <u>BACKGROUND</u>

This case arises from the tragic death of a minor child, D.B., caused by Craig Dickens ("Dickens") when he threw D.B. "across the room twice while drunk" at a Siegel Suites in Las Vegas, Nevada. (Sec. Am. Compl. ("SAC") ¶¶ 43–44, ECF No. 64). Plaintiff Robert Ansara brings this action as Special Administrator of the Estate of D.B., and Plaintiffs David Banks and Gabrielle Branon-Chesley are the natural father and mother of D.B. (*Id.* ¶¶ 2–4).

According to Plaintiffs' allegations, the events leading up to D.B.'s death began on April 23, 2017, when Clark County removed D.B. from the home and care of his natural mother "without any legal or factual basis" and "without warning and without any immediate threat of serious harm from Plaintiffs." (*Id.* ¶¶ 64–65). D.B. thereafter remained in the "custody and control" of Clark County Defendants and "in the foster home of FORD and DICKENS." (*Id.* ¶ 33). Plaintiffs allege that Ford and Dickens should never have had control over D.B. because of Dickens's alcoholism, his violent tendencies, and because both Ford and Dickens "lacked the skill and capacity to watch over and care for a child under the age of 24 months." (*Id.* ¶ 37).

Following D.B.'s death, Plaintiffs commenced this action by filing their Complaint on August 14, 2019, (Compl., ECF No. 1), which Plaintiffs amended one day later, (ECF No. 5). Defendants filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which the Court granted with leave to amend. (*See* Mots. Dismiss, ECF Nos. 16, 41, 45); (MTD Order, ECF No. 63). Plaintiffs filed the instant Second Amended Complaint (the "Complaint")

---

[1] As the Court discusses below, the Court declines to take judicial notice of any of Defendants' exhibits when evaluating the Motions to Dismiss. However, as the exhibits contain confidential information regarding a minor, good cause exists to grant leave to file the exhibits under seal.

on May 28, 2020. (SAC, ECF No. 64). The remaining Defendants again move to dismiss the Complaint. (*See* Mots. Dismiss, ECF Nos. 70, 72).

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1129 (9th Cir. 2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the Supreme Court has rejected any sort of "heightened" pleading requirement for § 1983 municipal liability claims because such a heightened pleading standard cannot be "square[d] . . . with the liberal system of 'notice

pleading' set up by the Federal Rules." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss becomes a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III. DISCUSSION

Plaintiffs' Second Amended Complaint asserts the following claims: (1) violation of civil rights pursuant to 42 U.S.C. § 1983 against Clark County; (2) violation of civil rights pursuant to 42 U.S.C. § 1983 against Clark County Defendants; (3) violation of civil rights

pursuant to 42 U.S.C. § 1983 against Clark County Defendants; (4) negligence against Clark County Defendants; (5) violation of substantive due process rights under the Nevada Constitution against Clark County Defendants; (6) negligence against Defendant Tropicana; and (7) wrongful death against all Defendants. (*See generally* SAC, ECF No. 64). The Court's below discussion first addresses Tropicana's Motion to Dismiss.

**A.  Tropicana's Motion to Dismiss, (ECF No. 70)**

The Complaint alleges that Tropicana is jointly and severally liable for D.B.'s death—based on theories of negligence and wrongful death—for Tropicana's failure to protect D.B. from Dickens after receiving multiple reports of Dickens abusing D.B. (*See* SAC ¶¶ 116–140). In its Motion to Dismiss, Tropicana argues that the Second Amended Complaint fails to state a claim upon which relief can be granted. (*See generally* Tropicana's Mot. Dismiss ("Tr.'s MTD"), ECF No. 70).

Specifically, Tropicana argues that Plaintiffs did not correct the pleading deficiencies in the negligence claim identified in the Court's prior Order. (*Id.* 4:4–5:7). Regarding whether Plaintiffs adequately allege the foreseeability of Dickens's conduct such that Tropicana owed D.B. a duty of care, Tropicana highlights the Court's explanation that, "[c]rucially missing are allegations of approximately when Tropicana received the complaints, how often the complaints were made, and what complained-of violence was aimed at D.B." (*Id.* 4:15–17) (quoting MTD Order 7:4–5). Additionally, Tropicana argues that Dickens's abuse constitutes a superseding intervening cause that cuts off Tropicana's liability, and a landlord cannot be liable for the negligent actions of its tenants under Nevada law. (*Id.* 5:8–6:15). With respect to Plaintiffs' wrongful death claim, Tropicana asserts that it cannot be liable because Dickens, not Tropicana, caused D.B.'s death. (*Id.* 6:24–7:14).

At bottom, Tropicana's arguments concern only duty and causation, and the foreseeability of Dickens's conduct is the lynchpin of Tropicana's duty and causation defenses.

*See Anderson v. Mandalay Corp.*, 358 P.3d 242, 248 (Nev. 2015) (explaining that a tortious act of a third-party does not cut off the defendant's negligence liability if the act was reasonably foreseeable to the defendant); *Rockwell v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1182 (Nev. 1996) (explaining that a landowner owes a duty to protect its tenants if the subject action is reasonably foreseeable to the landowner).  With respect to the wrongful death defense, as multiple actors may be deemed the legal cause of one's death, and Plaintiffs' negligence theory also requires plausible allegations that Tropicana caused D.B.'s death, the causation allegations are the same under both claims.

The foreseeability of Dickens's complained-of conduct determines the scope of Tropicana's duty to D.B.  Tropicana is generally correct that it cannot be held liable under a theory of negligence solely because it was the landlord of the property where D.B.'s death occurred. *See, e.g.*, *FGA, Inc. v. Giglio*, 278 P.3d 490, 501 (Nev. 2012).  But as the Court explained in its prior Order, Tropicana could be liable under a theory of negligence if it "knew or should have known at the time of the negligent conduct that [it] was creating such a situation that a third party might avail himself of the opportunity to commit such a tort or crime." (MTD Order 6:5–11, ECF No. 63) (quoting *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 725 (Nev. 2009)).  Stated differently, while "unlawful conduct can interrupt and supersede the causation between a negligent act and injury, an unlawful act will not supersede causation if it was foreseeable." *Anderson*, 358 P.3d at 248.  And Tropicana would have a duty to control the wrongful acts of a third person if Tropicana "ha[d] reasonable cause to anticipate such act and the probability of injury resulting therefrom." *Rockwell*, 925 P.2d at 1182 (quoting *Thomas v. Bokelman*, 462 P.2d 1020, 1022 (1970)).  The duty arises if Tropicana knew or had reason to know that the criminal acts of a third person "are occurring, or are about to occur" on the premises. *Id.* (quoting *Early v. N.L.V. Casino Corp.*, 678 P.2d 683, 684 (1984)).

In the instant Complaint, Plaintiffs allege that "from May 15, 2017 until August 13, 2017," Tropicana "received multiple complaints from the neighbors of FORD and DICKENS, alleging abuse of the minor D.B., including, but not limited to, allegations that DICKENS had hit D.B. on multiple occasions and complaints that DICKENS would be heard screaming at D.B. and slapping him until he would stop crying." (SAC ¶ 119). Plaintiffs further allege that Tropicana was aware "through personal observation and resident complaints, that DICKENS had been physically violent towards FORD and that he would frequently abuse alcohol and become violent toward FORD and other residents[.]" (*Id.* ¶ 120). Given Tropicana's alleged knowledge, Plaintiffs contend that Dickens's killing of D.B. was reasonably foreseeable. (*Id.* ¶¶ 122–23).

The Second Amended Complaint does not allege precisely the frequency or timing of the alleged reports regarding Dickens; instead, the Complaint again alleges "multiple" complaints during the full duration of Dickens and D.B.'s stay at the Siegel Suites. However, the Court finds the details regarding the complained-of violence aimed at D.B. sufficient to plausibly allege D.B.'s death was reasonably foreseeable despite less specific allegations regarding the timing of the violence. The Complaint alleges Tropicana was aware that Dickens beat D.B. until he would stop crying on more than one occasion—indicating that Dickens had likely beaten D.B. unconscious—frequently screamed at D.B., and abused alcohol. Infants are exceedingly vulnerable, and there is a fine line between beating an infant unconscious and beating him to death. Given Tropicana's alleged awareness of Dickens's life-threatening violence toward D.B., his repeated screaming at D.B., his alcohol abuse, and the behavior occurring over a relatively short four-month stay at Siegel Suites, it would have been reasonably foreseeable to Tropicana that Dickens could kill D.B. at its property. The foreseeability imposed a duty of reasonable care upon Tropicana, which Tropicana allegedly breached by failing to protect D.B., causing D.B.'s death. The same theory underlies Plaintiffs'

wrongful death claim against Tropicana.  Additionally, the foreseeability of Dickens's conduct terminates Tropicana's defense that Dickens was a superseding intervening cause of D.B.'s death.  Accordingly, Tropicana's Motion to Dismiss is denied.

**B.     Clark County Defendants' Motion to Dismiss, (ECF No. 72)**

In the Second Amended Complaint, Plaintiffs assert the following theories of recovery implicating Clark County Defendants: first cause of action for violation of civil rights pursuant to 42 U.S.C. § 1983 against Clark County; second and third causes of action for violation of civil rights pursuant to 42 U.S.C. § 1983 against Clark County Defendants; fourth cause of action for negligence against Clark County Defendants; fifth cause of action for violation of substantive due process rights under the Nevada Constitution against Clark County Defendants; and seventh cause of action for wrongful death against all Defendants. (SAC ¶¶ 63–115, 129–140).  Clark County Defendants primarily base their Motion to Dismiss on whether Plaintiffs have successfully amended their Complaint as directed by the Court in the prior Order, rather than addressing the sufficiency of the allegations with respect to the elements of each cause of action.  Defendants' arguments prove largely unsuccessful.  The Court addresses the proffered grounds for dismissal below.

i.     First Cause of Action

Plaintiffs' first cause of action alleges that Clark County violated due process protections under the Fourth and Fourteenth Amendments to the United States Constitution by seizing D.B. on April 23, 2017, from the care of D.B.'s natural mother "without warning and without immediate threat from the Plaintiffs." (SAC ¶ 65).  Plaintiffs contend that Clark County unlawfully conducted the seizure without adequate process. (*Id.* ¶ 72).

Clark County moves to dismiss the claim, arguing that the Second Amended Complaint, like the First Amended Complaint,fails to identify the defendant responsible for the conduct alleged. (Clark County Defs.' MTD ("CC MTD") 9:7–10:18).  Clark County also argues that

1 the claim is factually untrue because D.B.'s mother entered a no contest plea at the hearing in
2 which Clark County took D.B. into protective custody. (CC MTD 10:19–11:12).

3       The Court first disposes of Clark County's latter argument that the record in state court
4 proceedings disprove Plaintiffs' allegations.  As the Court explained in its prior Order, Clark
5 County's reference to the Family Division's Order does not defeat Plaintiffs' first cause of
6 action at this early 12(b)(6) stage because, while the Court can take judicial notice of the state
7 court order, the Court cannot accept the state court's findings as evidence that the Second
8 Amended Complaint's contrary factual allegations are incorrect or implausible. (MTD Order
9 14:18–15:5); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (explaining
10 that when taking judicial notice of another court's opinion, it may do so "not for the truth of the
11 facts recited therein" or "for disputed facts stated in the public record") (internal quotations
12 omitted); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (explaining
13 that in the context of a 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and
14 construed in the light most favorable to Plaintiffs").

15       Regarding the purported failure to cure the insufficiency of Plaintiffs' allegations, the
16 Court finds that Plaintiffs have corrected the deficiencies identified in the Court's prior Order
17 such that Clark County has fair notice of the conduct alleged.  In the First Amended Complaint,
18 Plaintiffs initially named Clark County as the applicable defendant, yet the factual allegations
19 vaguely extended to "Defendants, and each of them," and "Clark County Department of Family
20 Services" as the parties who "seized" D.B. without warning or immediate threat. (FAC ¶¶ 138–
21 39).  It was unclear to the Court who was allegedly responsible for the conduct and if the claim
22 was asserted against Defendants other than Clark County. (*See* MTD Order 15:7–15) ("Where
23 Plaintiffs' first claim fails, however, is with its vague references to 'Defendants' when alleging
24 wrongful conduct. . . . this first claim initially identifies Clark County as the applicable
25 Defendant, yet the allegations vaguely extend to 'Defendants, and each of them,' and 'Clark

County Department of Family Services' as the parties who 'seized' D.B."). In the Second Amended Complaint, Plaintiffs clarify the ambiguity by alleging only Clark County's liability under the claim by and through the actions of Clark County Department of Family Services and its employees. (*See* SAC ¶¶ 63–75). The Second Amended Complaint need not name each Clark County employee who violated Plaintiffs' due process rights to state a plausible claim. Rather, the only deficiency was "failure to give fair notice to the defendant (or defendants) who committed the wrongful conduct" because of the seemingly disparate actors allegedly responsible for the conduct. (MTD Order 15:13–14). As the Second Amended Complaint clarifies the previous deficient ambiguity, the Court denies dismissal of the claim.

        ii.      <u>Second, Third, and Fifth Causes of Action</u>

Plaintiffs' second, third, and fifth causes of action allege that Clark County Defendants violated D.B.'s due process rights under the United States and Nevada Constitutions by placing him in the care of Ford and Dickens. (SAC ¶¶ 76–104, 110–115). The second cause of action alleges that Clark County Defendants acted with deliberate indifference toward D.B. by placing him in a fictive kin foster home Defendants knew or should have known was unsafe. (*Id.* ¶¶ 76–95). The third cause of action alleges that Clark County Defendants violated D.B.'s due process rights by failing to provide adequate training and supervision to foster care social workers. (*Id.* ¶¶ 96–104). The fifth cause of action alleges that the same actions present substantive due process violations under the Nevada Constitution. (*Id.* ¶¶ 110–115).

        *a. Second Cause of Action*

Clark County Defendants move to dismiss the second cause of action. (CC MTD 11:22–17:11). They argue that the Second Amended Complaint has not cured the First Amended Complaint's failure to allege defendant-specific wrongdoing that would enable the Court to assess how each named Defendant acted to deprive Plaintiffs of their due process rights. (*Id.* 11:22–14:11). Clark County Defendants also argue that Plaintiffs' allegations are false because

discovery has revealed information contradicting several of Plaintiffs' contentions. (*Id.* 14:12–15:17). Clark County Defendants further contend that Nevada law generally vests them with discretion regarding how to approach reports of abuse, and the Complaint does not allege facts that would make an investigation of D.B.'s foster conditions mandatory under state law. (*Id.* 16:17–17:11).[2]

The Court first disposes of Defendants' arguments regarding the truth of the Complaint's allegations. As the Court discussed in its previous Order, to the extent Clark County Defendants' request the Court to take judicial notice of any state court materials for the truth of the information therein, the Court declines at the Motion to Dismiss stage. (MTD Order 14:19–15:6) (citing *Lee*, 250 F.3d at 690). The Court also declines to convert the Motion to Dismiss into a motion for summary judgment and therefore will not consider any evidence revealed in discovery when evaluating the sufficiency of the Complaint's allegations.

The Court next assesses the plausibility of Plaintiffs' allegations. In its prior Order, the Court dismissed the second cause of action after finding that "[e]ach of the applicable allegations for these due process claims sound in conclusory statements that fail to describe the wrongful conduct by each Defendant through more than vague and broad cites to . . . general duties of caseworkers or supervisors. Without defendant-specific allegations of wrongdoing, the Court cannot adequately evaluate how due process rights were infringed through deliberately indifferent conduct and by which defendant." (MTD Order 17:6–11). The First Amended Complaint conclusorily explained that Clark County Defendants improperly investigated Ford and Dickens, improperly licensed them as foster parents, failed to conduct a mandated supervisory monthly meeting, and knowingly or recklessly placed D.B. in a

---

[2] The argument is not responsive to the alleged constitutional deprivations because Clark County Defendants ignore whether compliance with the state law asserted satisfies the minimum requirements of due process.

dangerous situation. (*See* FAC ¶¶ 145–158).  The Complaint did not allege facts indicating how Clark County Defendants engaged in any of the above omissions.

In the Second Amended Complaint, Plaintiffs allege that Maldonado and Gutierrez, on behalf of Clark County, both "failed to fully conduct background research, investigate and interview FORD and DICKENS when approving them as fictive kin foster parents"; "failed to perform a mandated duty meeting, supervising and conducting a monthly meeting with D.B. to ensure his safety . . . contrary to Nevada Revised Statues and Administrative Code;" "failed to supervise and protect D.B. properly . . . pursuant to mandatory contact resolutions;" and "placed D.B. in a dangerous situation, about which they knew or should have known." (SAC ¶¶ 79–82, 86).  The Second Amended Complaint also alleges that Clark County, through CCDFS and its employees, failed to conduct an investigation into Dickens and Ford after Gutierrez had "been advised of domestic abuse and violence as well as alcohol abuse within the home, ultimately determining there was 'not enough information' to warrant an investigation." (*Id.* ¶¶ 83–84). [3]

The reasons for dismissal that Clark County Defendants offer are not responsive to the claim alleged.  Clark County Defendants do not explain why the allegations are insufficient to allege a due process violation. (*See* CC MTD 11:13–18:13).  Rather, they argue only that Plaintiffs fail to plead Defendant-specific allegations in support of their claims, and that the allegations do not demonstrate that any of the Defendants failed to comply with mandatory duties imposed by Nevada statutes and regulations. (*Id.* 11:21–14:11, 15:18–18:8).  Although compliance with Nevada law could conceivably show the absence of a due process violation, Clark County Defendants do not explain why the laws they supposedly complied with meet the

---

[3] Clark County Defendants argue that the alleged phone call fails to support the claim because the call concerned Dickens's alcoholism and abuse of Ford, but it did not relate to risk posed to D.B. (MTD 5:12–17).  However, even if D.B. was not the subject of the abuse, the behavior reported in the call plausibly indicates that Clark County Defendants were deliberately indifferent by failing to investigate whether D.B. would be safe if he remained in the care of Ford and Dickens. (*See* SAC ¶¶ 83–84).

minimum standards of due process. (*Id.* 15:18–18:8).  A deliberate indifference due process claim is not predicated on failure to comply with state law; rather, it is based on Clark County Defendants' alleged failure to place D.B. in a safe foster placement once he came into the custody of the state. *See Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 847 (9th Cir. 2010).  Clark County Defendants have not connected their defenses to the applicable legal standard, and their alleged colorable compliance with state law therefore does not provide grounds for dismissal.

With respect to the specificity of the allegations, the Second Amended Complaint alleges which Defendants engaged in each alleged wrongful act instead of lumping together the "Defendants" and leaving the Court to guess who engaged in the allegedly unconstitutional omissions.  Accordingly, the Court finds that the allegations are sufficiently Defendant-specific to provide notice of the allegations in support of Plaintiffs' due process claim.  As Defendants do not articulate why the allegations fail to state a plausible claim to relief under the Fourteenth Amendment, the Court declines to dismiss the claim.

*b.   Third Cause of Action*

Defendants argue that the Court should dismiss Plaintiffs' third cause of action—which alleges that Clark County Defendants violated D.B.'s due process rights by failing to properly train foster care social workers and supervisors—should be dismissed because it is conclusory and fails to allege wrongful conduct on the part of Maldonado and Gutierrez. (CC MTD 18:15–19:20).  Plaintiffs argue that the allegations are sufficiently defendant-specific, and that the Second Amended Complaint adequately alleges that Maldonado and/or Gutierrez improperly licensed Ford and Dickens as fictive kin foster parents. (Pl.'s MTD Resp. 11:25–12:18).

The Court finds dismissal of the claim appropriate against Maldonado and Gutierrez, but not against Clark County.  The cause of action explains that Clark County's failure to train foster care social workers and supervisors resulted in Maldonado and Gutierrez improperly

licensing Ford and Dickens as D.B.'s foster parents. (SAC ¶¶ 97, 99). However, it is the preceding cause of action that alleges facts indicating that Maldonado and Gutierrez violated D.B.'s due process rights through improperly licensing Ford and Dickens as foster parents without conducting an investigation of their home. (*Id.* ¶ 78). The third cause of action does not allege that Maldonado and Gutierrez had any responsibility to train other employees. (*See id.* ¶¶ 96–104). Given that the third cause of action alleges only a theory upon failure to train, but alleges no failure to train on the part of Maldonado and Gutierrez, the Second Amended Complaint does not allege facts indicating they are liable under Plaintiffs' third cause of action. The Court therefore dismisses the claim without prejudice against Maldonado and Gutierrez.

However, Plaintiffs do allege that Clark County, through CCDFS, should have provided training to social workers and supervisors on several topics alleged in the Complaint, and failure to do so violated D.B.'s constitutional rights by resulting in an unsafe foster placement that ultimately caused his death. (SAC ¶¶ 97, 100–104). Defendants do not argue that the failure to train does not rise to the level of a constitutional violation. (*See* CC MTD 18:15–19:20). As the Second Amended Complaint corrects the deficiencies of the First Amended Complaint, the Court denies dismissal of the claim as to Clark County.

c. *Qualified Immunity*

Clark County Defendants argue that the Court should dismiss Plaintiffs' federal claims because they are subject to qualified immunity. After disregarding the arguments that would require the Court to take judicial notice of evidence revealed in discovery, Defendants argue only that qualified immunity bars Plaintiffs' claims because Clark County Defendants' allegedly wrongful decisions regarding D.B.'s care were discretionary. (CC MTD 22:4–23). Clark County Defendants also argue that "Plaintiffs fail to allege facts even establishing plausible federal claims that County Defendants were aware of and/or deliberately indifferent to a substantial risk of harm by placing D.B. in Ford's Fictive Kin home." (*Id.* 22:15–18).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  Thus, to overcome the assertion of qualified immunity, Plaintiff must plead facts showing: (1) that Clark County Defendants violated a constitutional right of Plaintiffs, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

A right is "clearly established" when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (internal modifications original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. at 741).  If Plaintiffs cannot point to a case directly on point with the specific facts here to overcome the assertion of qualified immunity, they need to show that existing precedent at the time of the incident "placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.  Absent binding precedent, the Court considers all relevant decisional law to inform the analysis, including unpublished circuit and district court decisions. *See Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004).

Here, D.B. has a clearly established right at issue.  In *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 847 (9th Cir. 2010), the Ninth Circuit held that foster children have a clearly established right to safe foster care placement once in the custody of the state.  Deliberate indifference toward the foster child's right rises to the level of a constitutional violation if it "shocks the conscience." *Id.* (quoting *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)).  To plead a legally cognizable constitutional violation, Plaintiffs bear the burden to allege facts indicating, "an objectively substantial risk of harm," and "the officials were

subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Id.* at 845.

Plaintiffs allege that Clark County Defendants should have known Ford and Dickens lived without a permanent residence, Dickens abused alcohol and became violent toward Ford and other Siegal Suites residents, Ford and Dickens regularly fought to the point of physical violence, and they lacked the capacity to watch over a 24-month-old child. (SAC ¶ 37). Plaintiffs also allege that Clark County, by and through Gutierrez, received a report on May, 23, 2017 that Dickens was violent toward Ford while he was intoxicated, but Gutierrez failed to investigate the claims. (*Id.* ¶¶ 40–42). The Court finds that the allegations regarding the May phone call plausibly indicate that Clark County Defendants knew of a substantial risk of violence to D.B. and consciously disregarded that risk by failing to act despite the reported physical abuse in the home.[4] Accordingly, the Court finds that Clark County Defendants have not demonstrated their entitlement to qualified immunity at this stage of the proceedings.[5]

//

---

[4] Deliberate indifference generally requires subjective knowledge of a substantial risk of harm. *Tamas*, 630 F.3d at 845–46. However, the standard for deliberate indifference which the Circuit applied to the foster care context in *Tamas* derives from the prison context. *Id.* ("In the prisoner cases we have held that deliberate indifference 'requires an objective risk of harm and a subjective awareness of that harm.' . . . These cases inform our analysis and our review of precedent from our sister circuits."). In the prison context, the state actors responsible for prisoners' are often aware of the prisoners' circumstances by observing the conditions of confinement on a daily basis at the allegedly offending facility. By contrast, in the foster care context, subjective knowledge of a risk of harm relies on third-party reporting to relevant agencies or the agencies' own investigation. *See id.* at 837–841 (chronicling approximately 30 reports of abuse). In the case of an infant foster child, it is unclear whether subjective knowledge would be required to demonstrate deliberate indifference because the agency would be able to avoid liability by declining to investigate the suitability of a foster care placement prior to rehoming a child. Given the ambiguity regarding the law, and the allegation that Clark County through Gutierrez knew of D.B.'s drunken, physically abusive behavior, the Court does not address whether the allegations regarding Clark County Defendants' other failures to investigate the suitability of D.B.'s foster placement would terminate Defendants' alleged immunity.

[5] The Court also notes that, at summary judgment, Defendants bear the burden to demonstrate their entitlement to qualified immunity with respect to each of Plaintiffs' § 1983 theories. Here, Defendants' briefing lumps Plaintiffs' claims together with little analysis.

### d. Fifth Cause of Action

Plaintiffs' fifth cause of action alleges that the actions complained of in the second and third causes of actions violate Plaintiffs' due process rights under the Nevada Constitution. (SAC ¶¶ 109–115). Defendants seek dismissal of the claim, arguing that it should be dismissed for the same reasons as the federal claims. (CC MTD 28:14–21). For the reasons discussed above, the Court declines to dismiss the claim. However, the Court notes that Gutierrez and Maldonado's conduct does not support a deliberate indifference theory predicated upon failure to train.

#### iii. Fourth and Seventh Causes of Action

Plaintiffs allege that Clark County Defendants are liable in negligence and for wrongful death. (SAC ¶¶ 105–109, 129–140). Defendants move to dismiss the claims, arguing that: (1) Plaintiffs' allegations are not sufficiently Defendant-specific; (2) Plaintiffs have failed to articulate a duty Clark County Defendants owed to Plaintiffs; (3) Plaintiffs' allegations of breach are conclusory and lack specificity; (4) Plaintiffs allege duties are tied to statutes that do not apply to fictive kin foster homes; (5) Dickens' killing of D.B. is a superseding intervening cause that cuts off Clark County Defendants' liability; and (6) Clark County Defendants are entitled to discretionary act immunity. The Court addresses each argument in turn.

First, the Court finds that Plaintiffs' allegations are sufficiently Defendant-specific. The Second Amended Complaint alleges that Maldonado, Gutierrez, and Clark County negligently placed D.B. in the care of Dickens and Ford. (SAC ¶ 107). Plaintiffs allege that Maldonado and Gutierrez, agents of Clark County, were responsible for D.B.'s placement as his Case Manager and Investigative Case Manager, respectively. (*See id.* ¶¶ 5–6).

Second, Plaintiffs adequately allege duty. Plaintiffs contend that "common law of the state of Nevada imposes a mandated duty of reasonable professional judgment and reasonable care upon Defendants . . . in carrying out their responsibilities as social workers employed to

place children within state custody and ensuring the safety of said children once placed." (*Id.* ¶ 106). Defendants' Motion does not explain why the allegation demonstrates that "Plaintiffs have failed to articulate a duty that Clark County and/or its employees had in these circumstances[.]" (*See* CC MTD 24:4–14).

Third, unlike the First Amended Complaint, Plaintiffs' instant allegations of breach are not conclusory. The First Amended Complaint conclusorily named the statutes governing foster care administration that Defendants allegedly breached, but it did not identify the conduct constituting breach. (*See, e.g.*, FAC ¶ 170(b)) (alleging Defendants were in breach by "failing to adequately supervise the care of D.B. . . . as required by NAC 432B and NRS 424, 432A and 432B."). The same deficiency is not present in the Second Amended Complaint; the instant Complaint alleges the breaching behavior and how Defendants engaged in the allegedly breaching behavior. (*See, e.g.*, SAC ¶ 107(b)) ("Failing to adequately supervise the care of D.B. while in the custody of FORD and DICKENS, including failing to regularly perform mandated checks on D.B. while at the home of FORD and DICKENS."). Unlike the First Amended Complaint, the Second Amended Complaint does not leave the Court to guess the allegedly wrongful conduct of Defendants.

Fourth, Defendants contend that the allegations are based on duties in NRS 424 and NAC 424, which do not apply because they concern foster homes but not fictive kin placements, unlike duties found in NRS 432B. (CC MTD 24:15–20). Defendants allege that the deficiency applies to the allegedly breaching behavior in ¶ 107(a–b, k, f–i). However, the Second Amended Complaint alleges that Defendants' duties arise in common law. (SAC ¶ 106). Even if Defendants' duties were limited by statute, the duties are also allegedly encompassed within NRS 432B, a provision Defendants concede is applicable to fictive kin foster homes. *See* NRS §§ 432B.220–322, 330–400.

Fifth, for the reasons discussed regarding Tropicana, Dickens's actions were not a superseding intervening cause of D.B.'s death because the actions were reasonably foreseeable. The Court next discusses Clark County Defendants' claim to discretionary act immunity.

### iv. Discretionary Act Immunity

In Nevada, no negligence action may be brought against an employee of the state "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." NRS 41.032(2). Nevada looks to federal law regarding the Federal Tort Claims Act (the "FTCA") when analyzing claims of discretionary act immunity and has adopted the *Berkovitz-Gaubert* test for determining whether a decision falls within the scope of that immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 727–29 (Nev. 2007); *see also Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 n.50 (Nev. 2007) ("The discretionary-act immunity provision contained in NRS 41.032(2) is 'virtually identical' to the discretionary-act immunity provision found in the [FTCA], 28 U.S.C. § 2680(a) (2000)."). Under that test, in order to qualify for discretionary-act immunity, "a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* at 729.

The Court may only grant a motion to dismiss a claim on the basis of an affirmative defense if, from the facts alleged in the complaint, there is no dispute that the affirmative defense would bar the claim. *See Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (explaining that the court should not grant a motion to dismiss on the basis of an affirmative defense if "from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact."). Here, even if Clark County Defendants' alleged conduct were discretionary, it is not clear from the face of the Second Amended Complaint that their exercise of discretion was based on "social, economic, or

political policy." Accordingly, at this stage of the proceedings, the Court declines to dismiss Plaintiffs' negligence claims for Clark County Defendants' alleged discretionary act immunity.

### C. Motion to Amend, (ECF No. 91)

Plaintiffs seek leave to amend their Complaint if the Court determines the Complaint is deficient on its face. Given that the Court has found each claim sufficiently pleaded against at least one Defendant, the Court denies leave to amend without prejudice. Should Plaintiffs demonstrate cause to amend their failure to train claims against Maldonado and Gutierrez, Plaintiffs may file a renewed Motion to Amend.

## IV. CONCLUSION[6]

**IT IS HEREBY ORDERED** that Tropicana's Motion to Dismiss, (ECF No. 70), is **DENIED**.

**IT IS FURTHER ORDERED** that the Clark County Defendants' Motion to Dismiss, (ECF No. 72), is **GRANTED in part** and **DENIED in part** consistent with the forgoing.

**IT IS FURTHER ORDERED** that Clark County Defendants' Motions for Leave to File, (ECF Nos. 73, 103) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend, (ECF No. 91), is **DENIED without prejudice**.

Dated this 22 day of February, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[6] Defendants also request dismissal of two of the requested remedies in Plaintiffs' prayer for relief at the conclusion of the Complaint. (CC MTD 29:9–20). As the requests are not causes of action subject to dismissal under Rule 12(b)(6), the Court denies dismissal of the requested remedies.